UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROBERT J. MONACO,                                    Case No. 25-cv-1387

                Plaintiff,

                                                                                 **COMPLAINT**
                                                                                 **AND JURY DEMAND**

    -against-


CITY UNIVERSITY OF NEW YORK and
SCOTT CALLY,

                Defendants.
------------------------------------------------------------x

## INTRODUCTION

1.     Plaintiff Robert J. Monaco ("Plaintiff" or "Mr. Monaco") brings this action for disability discrimination and retaliation through his attorneys, Menken Simpson & Rozger LLP, complaining of Defendants City University of New York ("CUNY") and Scott Cally ("Cally"), seeking damages and other appropriate relief.

2.     Plaintiff's complaint is brought pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL").[1]

---

[1] Plaintiff also has legal claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Those claims are currently pending before the EEOC. Upon receipt of his Notice of Right to Sue, Plaintiff intends to amend this Complaint to add his causes of action under the ADA.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 29 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 as the events and conduct giving rise to this claim occurred in this District.

5. Plaintiff served Defendants with his verified Notice of Claim by certified mail on March 11, 2024, pursuant to N.Y. Educ. Law § 6224, Gen. Mun. Law § 50-e, and Gen. Mun. Law § 50-i. Notice was timely received by Defendants and Plaintiff sat for a Gen. Mun. Law § 50-h hearing on October 1, 2024.

6. Pursuant to N.Y. Educ. Law § 6224(2), at least thirty days have elapsed since a demand setting forth the underlying basis for this matter was presented to CUNY for adjustment, and the officers or bodies having the power to adjust or pay such demand have neglected or refused to make an adjustment or payment thereof for thirty days.

7. On March 21, 2024, Mr. Monaco filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting claims of disability discrimination, "regarded as" discrimination, and retaliation. The matter remains pending. Upon receipt of his Notice of Right to Sue, Plaintiff intends to amend this Complaint to add his causes of action under the ADA.

## PARTIES

8. Plaintiff Robert J. Monaco is a resident of Carteret, New Jersey and at all relevant times was an "employee" of Defendants at Kingsborough Community College ("KCC") within the meaning of the Rehabilitation Act, the NYSHRL, and the NYCHRL.

9. Defendant CUNY is the corporate body designated as the board of higher education in the City of New York and is composed of "each senior college and community college," including KCC. CUNY is headquartered at 205 East 42nd Street, New York, NY 10017. KCC is located at 2001 Oriental Boulevard, Brooklyn, NY 11235.

10. At all relevant times, Defendant CUNY was Plaintiff's "employer" within the meaning of the Rehabilitation Act, the NYSHRL, and the NYCHRL.

11. Defendant Cally is the Chair of the Department of Communications and Performing Arts Department at Kingsborough Community College in Manhattan Beach, Brooklyn. On information and belief, Cally resides in Kings County, Brooklyn.

12. At all relevant times, Cally was Plaintiff's "employer" within the meaning of the NYSHRL and NYCHRL.

## FACTUAL ALLEGATIONS

### Background

13. For the last decade, Mr. Monaco has enjoyed a rich, gratifying, and successful career as a "Senior College Laboratory Technician" ("CLT"), instructing students on building scenery sets for two theatrical performance each semester year at KCC, a CUNY community college located in Manhattan Beach, Brooklyn.

14. For his entire career at KCC, he has also served as an Adjunct Assistant Professor, which carries the responsibility of designing the sets for the Theater Program – the sets that, as a CLT, he and his students will later construct and paint during the semester.

15. The class Mr. Monaco teaches is called THA 4100 – Production Series Practicum. THA 4100 is a "practice-based course that provides students with hands-on experience working onstage and backstage for live theatrical production. Working with an

ensemble of student and faculty artists, students will practice and execute the theatre skills associated with acting, design, technical theatre, and stage management." *See* https://www.coursicle.com/kbcccuny/courses/THA/4100/ (last accessed March 11, 2025).

16. Working with these aspiring actors, stagehands, and technical designers as a CLT and Adjunct Assistant Professor and providing them with hands-on, technical theatre training has been one of the great joys of Mr. Monaco's career, and he has continuously excelled in his position.

17. Mr. Monaco's job responsibilities are not generally physically demanding. Occasionally, and only on certain days when the team is either building or striking a set, Mr. Monaco lifts heavy items, usually with the help of a student or two, despite the fact that he is not required to do so.

18. According to Mr. Monaco's job description, which he received in 2013, lifting heavy equipment, or any other strenuous physical activity, is not one of his job duties. The CLT position has several minimum and preferred qualifications—eight years of related experience, supervising experience, scenic design experience, knowledge of carpentry and rigging, and ability to work under pressure. The CLT job description makes no mention of lifting heavy items or anything else related to physical prowess.

19. As far as the job description is concerned, a disabled individual with no use of their arms could be hired for and excel at the position.

**Mr. Monaco's Workplace Injuries and Reasonable Accommodation Request**

20. Unfortunately, in Mr. Monaco's line of work, accidents causing injury do happen on set for a multitude of reasons.

21. On December 9, 2021, a well-meaning student manipulated a piece of theatre equipment incorrectly, resulting in an injury to Mr. Monaco's bilateral hips and shoulder. Since any physically demanding tasks were complete and the next semester's production would be planned in advance, Mr. Monaco did not initially feel the need to request a reasonable accommodation for his injuries. Instead, he continued working through them with the assistance of work-study students.

22. Mr. Monaco was treated by an orthopedist, Dr. Sherif Hassan, and remains under his care.

23. Then, on September 25, 2023, Mr. Monaco slipped and fell on campus, reinjuring his left shoulder.

24. On November 11, 2023, Mr. Monaco fell into a hole on the stage. While trying to brace for his fall, Mr. Monaco reinjured his right shoulder.

25. Mr. Monaco's injuries limited his ability to climb ladders, lift heavy pieces of scenery unassisted, and perform tasks involving repetitive pushing and pulling.

26. After he reinjured his shoulder, Mr. Monaco continued to work for the next several weeks. The show he was then working on was a small production with a manageable set. For that reason, Mr. Monaco did not feel the need to ask for a reasonable accommodation at that time.

27. But in early December, Mr. Monaco was concerned that he might need a little bit of help for the second semester show, which was going to be a more elaborate musical production. Going forward, especially given that he is in his 50s, Mr. Monaco did not want to put himself in a position where he could get yet another injury.

28. On December 4, 2023, Mr. Monaco filed for a Reasonable Accommodation with CUNY.

29. The following is the full text of Mr. Monaco's reasonable accommodation request:

*Reasonable Accommodation Request*

*I am requesting reasonable accommodation to perform the essential functions of my position due to multiple on-the-job injuries. Twice I injured myself working with students and if I was working with a trained professional these injuries could have been avoided.*

*In 2021 I was injured to the point where I could not even pick up a cordless drill with my dominant hand. Still, I did not miss a beat in the building of THE LARAMIE PROJECT because I had Oziel and Ross to do most of the heavy lifting while I was recovering and mostly ignoring my injuries because I am so dedicated to my job.*

*Now I realize that ignoring my injuries as I grow older will not serve me well. I will keep getting re-injured if I do not have the right kind of help.*

*I need help legging up and laying in platforms. I need help Installing walls/flats. I need help with storing of risers or any clean up that includes heavy lifting. I need help with anything that involves climbing a ladder. In addition, the Theater Program needs to coordinate with Celeste Creegan the latest safety precautions regarding fall protection.*

*I can paint, I can build, I can do all general construction and assembly, I can prop and dress a set.*

*I cannot do the heavy lifting that I could easily do five to ten years ago without help. The assistance that I need is not a job for Work Study students or TH41 students assigned to the Scene Shop.*

*Thank you for your consideration.*

**A. Defendant's Failure to Accommodate Plaintiff's Disability and Retaliation**

30. On December 14, 2023, Mr. Monaco was invited to meet with Human Resources ("HR") to specifically discuss his reasonable accommodation request with HR and the Chair of

6

the Department of Communications and Performing Arts Department, Scott Cally ("Cally"). Cally is also Mr. Monaco's supervisor.

31.     When Mr. Monaco arrived at the meeting, Cally was present with Gila Rohr ("Rohr"), who Mr. Monaco knows as the Director of Human Resources at KCC.

32.     Instead of discussing his reasonable accommodation request, Cally demoted Mr. Monaco.

33.     Cally informed Mr. Monaco that he would no longer teach THA 4100 the following semester. Mr. Monaco has taught THA 4100 every semester for nearly 10 years.

34.     The removal of THA 4100 from Mr. Monaco's portfolio of responsibilities resulted in an annualized approximate $20,000.00 reduction in compensation. This reduction also potentially affected Mr. Monaco's future earnings and pension benefits.

35.     Cally then handed Mr. Monaco a document entitled "Revised Duties – Senior CLT in Theatre."

36.     Mr. Monaco's revised duties constituted a demotion. KCC and Cally gutted Mr. Monaco's job responsibilities as a Senior CLT and Technical Director of the Theatre Program, effectively reducing him to a "techie" or assistant set designer. Instead of serving as a supervisor who creates, envisions, and designs sets, Mr. Monaco's new responsibilities were severely limited to tasks like "setup, maintenance and cleanup," maintaining inventory of equipment and pro stocks, "general maintenance and upkeep," and to "assist as necessary with scenic construction, rigging, lighting, sounds and other production related tasks."

37.     Mr. Monaco felt shocked and humiliated.

38. Cally and HR engaged in no discussion about Mr. Monaco's reasonable accommodation request. They did not engage in anything resembling an interactive process or cooperative dialogue.

39. Mr. Monaco's "revised" duties cannot possibly constitute a reasonable accommodation, as they bear no relation to his request not to lift heavy objects without help. Instead, the "revised duties" stripped Mr. Monaco of all his creative, artistic, and supervisory responsibilities—which were the heart of his job function as the set designed and Technical Director of the KCC theatre program for the past decade.

40. Mr. Monaco's demotion and termination of adjunct duties were in retaliation for requesting a reasonable accommodation.

41. KCC and Cally also discriminated against Mr. Monaco based on his disabilities and/or by regarding him as disabled—after all, Mr. Monaco could perform all of the essential functions of the CLT position and all of the responsibilities associated with teaching THA 4100.

42. It would have been very easy to accommodate Mr. Monaco's disability. In designing sets, the team would typically only lift heavy objects for no more than 6-9 hours per semester, broken up over two separate days. The heavy lifting includes setting up and taking down risers, legging up and laying in platforms, and installing walls. Thes projects—which are not included in Mr. Monaco's job description—are known well in advance and scheduled by Mr. Monaco himself.

43. All KCC would have had to do was to hire a stagehand or laborer to assist Mr. Monaco for 6-9 hours per semester, most likely on two different days each semester. Alternatively, the theatre program's other CLTs, like Bobby Rene Fullerton and Alex Jones, or

8

the Performing Arts Technician, Chris Califiore, could have easily assisted Mr. Monaco with lifting.

44. Defendants' failure to accommodate Mr. Monaco, and its discrimination and retaliation against him, has caused him severe emotional distress, for which he is receiving psychological counseling. It has been difficult for Mr. Monaco to express how shocking, awful, and degrading this experience has been for him.

45. Defendants' actions have left him demoralized, and have devasted his career as a theatre artist, educator and mentor.

46. In sum, after getting injured on the job and working through certain tasks in pain, Mr. Monaco simply asked for a little help. Instead of helping him, Cally and KCC stripped Mr. Monaco of his teaching duties and accompanying compensation, supervisory responsibilities, creative and artistic leadership, and, finally, his dignity.

## FIRST CAUSE OF ACTION
**Disability Discrimination, Failure to Accommodate**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**
**Against Defendant CUNY**

47. Plaintiff repeats and incorporates by reference all of the above allegations as if fully set forth herein.

48. Section 504 of the Rehabilitation Act prohibits programs that receive federal funds or have certain federal contracts from discriminating against an individual on the basis of his disability.

49. Defendant CUNY is subject to Section 504 of the Rehabilitation Act pursuant to 29 U.S.C. § 794(b).

50. Plaintiff is an individual with a disability as defined by the Rehabilitation Act.

9

51. As set forth above, Plaintiff is qualified to perform the essential job functions of his job.

52. Defendant discriminated against Plaintiff on the basis of his disability (or because Defendant regarded him as disabled) by, *inter alia*, failing to provide him with a reasonable accommodation and subsequently demoting him to a lesser position with significantly lower compensation, causing Plaintiff to suffer an adverse employment action and substantial emotional distress.

53. Defendant failed to show and cannot show that providing a reasonable accommodation for Plaintiff's disability would pose an undue hardship.

54. As a result of Defendant CUNY'S actions, Plaintiff is entitled to recover damages, including reasonable attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**Disability Discrimination, Failure to Accommodate, Hostile Work Environment**
**NYSHRL, N.Y. Exec. Law § 290 *et seq.***
**Against All Defendants**

55. Plaintiff repeats and incorporates by reference all of the above allegations as if fully set forth herein.

56. Plaintiff is disabled within the meaning of the NYSHRL.

57. As set forth above, Plaintiff is qualified to perform the essential job functions of his job.

58. Defendants discriminated against Plaintiff on the basis of his disability (or because Defendants regarded him as disabled) by, *inter alia*, failing to provide him with a reasonable accommodation and subsequently demoting him to a lesser position with significantly lower compensation, causing Plaintiff to suffer an adverse employment action and substantial emotional distress.

59. Defendants failed to show and cannot show that providing a reasonable accommodation for Plaintiff's disability would pose an undue hardship.

60. Plaintiff was also subjected to inferior terms, conditions, or privileges of employment because of his disability (or Defendants' perception of him as disabled).

61. Defendant Cally personally participated in the conduct giving rise to Plaintiff's discrimination claims, and is therefore liable under the NYSHRL.

62. Defendant Cally is also liable under the NYSHRL for aiding and abetting the conduct giving rise to Plaintiff's discrimination claims.

63. As a result of Defendants' actions, Plaintiff is entitled to recover damages, including economic damages, emotional distress damages, and other compensatory damages, punitive damages, and reasonable attorney's fees and costs.

### THIRD CAUSE OF ACTION
**Retaliation**
**NYSHRL, N.Y. Exec. Law §§ 290** *et seq.*
**Against All Defendants**

64. Plaintiff repeats and incorporates by reference all of the above allegations as if fully set forth herein.

65. Plaintiff participated in a protected activity known to Defendants when he requested a reasonable accommodation for his disability.

66. Plaintiff suffered an adverse employment action(s) when, *inter alia*, he was demoted with a decrease in compensation and subjected to inferior terms, conditions, and privileges of employment.

67. Plaintiff's disability (or perceived disability) and request for reasonable accommodation were the but-for causes of the adverse action(s).

68. Defendant Cally personally participated in the conduct giving rise to Plaintiff's retaliation claim and is therefore liable under the NYSHRL.

69. Defendant Cally is also liable for aiding and abetting the conduct giving rise to Plaintiff's retaliation claim.

70. As a result of Defendants CUNY and Cally's actions, Plaintiff is entitled to recover damages, including economic damages, emotional distress damages, and other compensatory damages, punitive damages, and reasonable attorney's fees and costs.

**FOURTH CAUSE OF ACTION**
**Disability Discrimination, Failure to Accommodate, Hostile Work Environment**
**NYCHRL, N.Y.C. Admin. Code §§ 8-101 *et seq.***
**Against All Defendants**

71. Plaintiff repeats and incorporates by reference all of the above allegations as if fully set forth herein.

72. Plaintiff was disabled within the meaning of the NYCHRL.

73. Defendants discriminated against Plaintiff on the basis of his disability (or because Defendants perceived him as disabled) by, *inter alia*, failing to provide him with a reasonable accommodation and subsequently demoting him to a lesser position with significantly lower compensation, causing Plaintiff to suffer an adverse employment action and substantial emotional distress.

74. Defendants failed to show and cannot show that providing a reasonable accommodation for Plaintiff's disability would pose an undue hardship.

75. Plaintiff was also treated "less well" and subjected to inferior terms, conditions, or privileges of employment because of his disability (or Defendants' perception of him as disabled).

76. Defendant Cally personally participated in the conduct described and is therefore personally liable under the NYCHRL.

77. Defendant Cally is also liable for aiding and abetting the conduct underlying Plaintiff's legal claims.

78. As a result of Defendants CUNY and Cally's actions, Plaintiff is entitled to recover damages, including economic damages, emotional distress damages, and other compensatory damages, punitive damages, and reasonable attorney's fees and cost.

### FIFTH CAUSE OF ACTION
### Retaliation
### NYCHRL, N.Y.C. Admin. Code § 8-107
### Against All Defendants

79. Plaintiff repeats and incorporates by reference all of the above allegations as if fully set forth herein.

80. Plaintiff participated in a protected activity known to Defendants when he requested a reasonable accommodation for his disability.

81. Plaintiff suffered an adverse employment action(s) when, *inter alia*, he was demoted with a decrease in compensation and subjected to inferior terms, conditions, and privileges of employment.

82. Plaintiff's disability (or perceived disability) and request for reasonable accommodation were the but-for causes of the adverse action(s).

83. Defendant Cally personally participated in the conduct giving rise to Plaintiff's retaliation claim and is therefore liable under the NYCHRL.

84. Defendant Cally is also liable for aiding and abetting the conduct giving rise to Plaintiff's retaliation claim.

85. As a result of Defendants CUNY and Cally's actions, Plaintiff is entitled to recover damages, including economic damages, emotional distress damages, and other compensatory damages, punitive damages, and reasonable attorney's fees and costs.

### SIXTH CAUSE OF ACTION
### Failure to Engage in Cooperative Dialogue
### NYCHRL, N.Y.C. Admin. Code §§ 8-101 *et seq.*
### Against All Defendants

86. Plaintiff repeats and incorporates by reference all of the above allegations as if fully set forth herein.

87. As set forth above, Plaintiff is disabled within the meaning of the NYCHRL

88. Plaintiff was entitled to a reasonable accommodation because he was disabled.

89. As set forth above, Plaintiff requested reasonable accommodations for his disability.

90. Defendants failed to engage in the cooperative dialogue when, *inter alia*, Defendants unilaterally made the decision to demote Plaintiff with decreased compensation; failed to engage in written or oral dialogue concerning Plaintiff's accommodation needs; and failed to discuss potential accommodations that may address Plaintiff's accommodation needs.

91. Defendant Cally personally participated in the conduct described and is therefore liable under the NYCHRL.

92. Defendant Cally is also liable for aiding and abetting the conduct underlying Plaintiff's legal claims.

93. As a result of Defendants CUNY and Cally's actions, Plaintiff is entitled to recover damages, including economic damages, emotional distress damages, and other compensatory damages, punitive damages, and reasonable attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. Compensatory damages in an amount to be determined by a jury that is sufficient to compensate Plaintiff for all pain and suffering, humiliation, emotional distress, stress, and mental anguish;

b. Economic damages in the form of lost wages and compensation for lost benefits, plus pre-judgment interest;

c. Damages in the form of reinstatement and/or front pay, plus pre-judgment interest;

d. An award of punitive damages sufficient to deter Defendants from engaging in future unlawful conduct;

e. Reasonable costs and attorney's fees; and

f. Any further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: March 11, 2025
New York, New York

By: __/s/ Scott Simpson_____
Scott Simpson
MENKEN SIMPSON & ROZGER LLP
80 Pine Street, 33rd Floor
New York, NY 10005
Tel.: (212) 509-1616
Fax: (212) 509-8088
ssimpson@nyemployeelaw.com

*Attorney for Plaintiff*