UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROBERT J. MONACO,
Plaintiff,

-against-

CITY UNIVERSITY OF NEW YORK and SCOTT CALLY,
Defendants.

---

**ORDER**

25 Civ. 1387 (NCM) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

The Court has reviewed Plaintiff's motion to compel testimony at ECF No. 58 and Defendants' response in opposition at ECF No. 59. For the reasons stated herein, the Court grants in part, denies in part Plaintiff's motion to compel testimony.

## I. BACKGROUND

Plaintiff requests an order from the Court "compelling testimony from Defendants' witnesses regarding three critical meetings where Plaintiff's disabilities, reasonable accommodations, demotion, and removal from his adjunct teaching position were discussed." See ECF No. 58 at 1. Plaintiff deposed non-party witnesses Gila Rohr on September 14, 2026, and Ryan McKinney on September 16, 2026, respectively. Id. at 1-2. Plaintiff says that Ms. Rohr is the Executive Director of Human Resources at Kingsborough Community College ("KCC") and Mr. McKinney was Plaintiff's direct supervisor. Id. at 1-2. During the depositions, counsel for Defendants asserted attorney-client privilege when the witnesses were asked about three meetings that took place on or around November 8, 2023; December 2023; and August 22, 2024.[1] Id. at 2. Plaintiff notes that KCC's Executive Legal Counsel and Labor Designee, Beth

[1] Defendants' response states that the three meetings took place on or about November 8, 2023; December 11, 2023; and August 24, 2024. See ECF No. 59 at 2.

Douglas, participated in the first two meetings and was invited to the third meeting. Id. Plaintiff argues that "the evidence establishes that the purpose of the meetings at issue was not to render or solicit legal advice, but to discuss personnel, HR, and/or labor issues—all of which fall squarely into the category of 'business advice.'" Id. at 3.

As to the first meeting, Plaintiff highlights Ms. Rohr's testimony that the purpose of the meeting was not to obtain legal advice. Id. at 2. During this meeting, Plaintiff asserts Ms. Rohr testified that Defendants decided to strip Plaintiff's adjunct position.[2] Id. As to the second meeting, Plaintiff says it was initiated by Defendant Cally after an email to the Provost, which contained no reference to needing or seeking legal advice, but instead proposed taking adverse action against Plaintiff. Id. at 3. As to the third meeting, Plaintiff argues that "the fact that the attendees may have discussed a settlement proposal does not mean their communications were inherently privileged." Id. Plaintiff argues that he is "entitled to know what facts were discussed, what decisions were made, who made them, when his reasonable accommodation needs were known," etc. Id. at 4.

In response, Defendants note that Ms. Douglas attended all three meetings. See ECF No. 59 at 1. Defendants argue that during the meetings, Ms. Douglas acted in her legal capacity on behalf of KCC and engaged in privileged communications with the witnesses "concerning ongoing legal issues and settlement negotiations with Plaintiff." Id. As to the first two meetings, Defendants highlight that "Ms. Douglas offered her mental impressions on Plaintiff's allegations underlying his grievances" and gave guidance about whether Plaintiff would continue in his capacity as an adjunct. Id. at 1-2. As to the third meeting, Defendants note that "Ms. Douglas

---

[2] Defendants dispute Plaintiff's characterization of Ms. Rohr's testimony regarding the decision to demote Plaintiff. See ECF No. 59 at 2 n.1.

provided advice" concerning the proposed revision of Plaintiff's job duties "in the broader context of Plaintiff's looming discrimination claims." Id. at 2. Defendants say that once it became "clear that Plaintiff's counsel's questions centered on meetings in which Beth Douglas participated, Defense counsel interposed an objection, asserting that the meetings at issue concerned privileged attorney-client communications and directed the witnesses not to answer any questions related to the substance of the communications at those meetings." Id.

Defendants argue that Plaintiff attempts to designate Ms. Douglas as a "business consultant" to defeat the attorney-client privilege. Id. at 3. Defendants emphasize that Ms. Douglas is KCC's Executive Legal Counsel and Labor Designee, a role that is in KCC's Office of Legal Affairs in Labor Relations, and Ms. Douglas participated in all three meetings in her capacity as legal counsel. Id. at 2-3. "Ms. Douglas does not hold separate positions as a human-resources employee, business administrator, or management consultant. Nor does Ms. Douglas perform any role wholly separate and distinct from the provision of legal services." Id. at 2-3. Moreover, "[t]he meetings addressed Plaintiff's pending grievances, belated accommodations issues, potential employment actions, and settlement proposals, in anticipation of potential litigation." Id. at 3. Because the meetings involved communications that fall within the scope of the attorney-client privilege, Defendants argue there is no basis to direct Ms. Rohr and Mr. McKinney to testify further about the substance of the three meetings. Id.

With regards to the upcoming deposition of Defendant Cally, which is currently scheduled for October 29, 2026, Defendants do not dispute that Defendant "Cally was the sole decision-maker concerning the change in Plaintiff's job duties after he requested a reasonable accommodation . . . as well as the decision concerning whether Plaintiff would continue teaching the practicum in his adjunct professor role." Id. at 3-4. Defendants state that "Plaintiff is well

within his rights to conduct a thorough deposition of Mr. Cally concerning the decisions he made, the factual circumstances underlying those decisions, when he became aware of Plaintiff's accommodation needs, and how those decisions were implemented and communicated." Id. at 4. However, Defendants maintain that Plaintiff cannot use the deposition to obtain the substance of privileged communications involving Ms. Douglas in her capacity as legal counsel. Id.

## II. LEGAL STANDARDS

The Federal Rules of Civil Procedure provide that a party may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012) (internal quotations & citations omitted). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). For a communication to qualify for this privilege, its predominant purpose must be to obtain or provide legal advice. See Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 37 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014); see also Egiazaryan v. Zalmayev, 290 F.R.D. 421, 428 (S.D.N.Y. 2013) (explaining the attorney-client privilege only applies where the communication in question is "primarily or predominantly of legal character"). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." In re Cnty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007). "It is well-established that the attorney-client privilege applies only where legal advice, not business advice, is sought and

given." Urb. Box Off. Network, Inc. v. Interfase Managers, L.P., No. 01 Civ. 8854 (LTS) (THK), 2006 WL 1004472, at *4 (S.D.N.Y. Apr. 18, 2006). The burden is on the party asserting the privilege and any ambiguities are construed against that party. Koumoulis, 295 F.R.D. at 38 (collecting cases).

## III. DISCUSSION

Based on the record before the Court, Ms. Rohr, Mr. McKinney, Defendant Cally and Ms. Douglas attended the first and second meetings.[3] See ECF No. 58 at 2; ECF No. 59 at 2. Ms. Rohr, Defendant Cally, Ms. Douglas and Dr. Sharon Warren Cook, Senior Vice President for Academic Affairs and Provost, attended the third meeting. See ECF No. 58 at 2; ECF No. 59 at 2. The parties characterize the substance of the three meetings differently. Compare ECF No. 58 at 2-3, with ECF No. 59 at 2-3. Plaintiff generally contends that "the purpose of the meetings at issue was . . . to discuss personnel, HR, and/or labor issues." ECF No. 58 at 3. Defendants state that "[t]he meetings addressed Plaintiff's pending grievances, belated accommodations issues, potential employment actions, and settlement proposals, in anticipation of potential litigation." ECF No. 59 at 3.

The parties also disagree about Ms. Douglas's role and the capacity in which she participated in the meetings. Compare ECF No. 58 at 2-3, with ECF No. 59 at 2-3. While Plaintiff acknowledges Ms. Douglas's title as KCC's Executive Legal Counsel and Labor Designee, he argues that Ms. Douglas served a dual role as a legal advisor and business consultant and attended the meetings "in her capacity as a labor designee, grievance decisionmaker, HR/legal administrator, and/or member of management, helping KCC decide

[3] Plaintiff states that then-Provost Joanne Russell also attended the second meeting. See ECF No. 58 at 2.

how to handle a personnel matter in the ordinary course of business." See ECF No. 58 at 2-3. Defendants respond that Ms. Douglas, as an employee of KCC's Office of Legal Affairs and Labor Relations, does not have a non-legal role and participated in the meetings in her capacity as legal counsel. See ECF No. 59 at 2-3. Moreover, Defendants assert that Ms. Douglas shared her mental impression about various legal issues and provided guidance on these matters during the meetings. Id. at 3.

Defendants have sufficiently shown that Ms. Douglas's primary purpose in attending the meetings was to provide legal advice, and her communications at the meetings were primarily legal in nature. See Koumoulis, 295 F.R.D. at 37; Egiazaryan, 290 F.R.D. at 428. While Plaintiff may question the witnesses about the meetings in general, the Court finds that communications at the meetings by or in response to Ms. Douglas are protected by the attorney-client privilege. Protected communications involving Ms. Douglas at the meetings include but are not limited to: (1) Ms. Douglas's mental impressions on Plaintiff's underlying allegations; (2) Ms. Douglas's guidance about whether Plaintiff should continue in his capacity as an adjunct; and (3) Ms. Douglas's advice about proposed revisions to Plaintiff's job duties in the broader context of Plaintiff's discrimination claims. See ECF No. 59 at 2. Accordingly, the deposition of Defendant Cally should go forward subject to these limitations. To the extent Plaintiff seeks to re-open the depositions of Ms. Rohr and Mr. McMcKinney, the witnesses cannot be compelled to provide further testimony related to communications at the three meetings by or in response to Ms. Douglas.

Dated: Brooklyn, New York
October 5, 2026

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge