UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT J. MONACO,<br>Plaintiff,<br><br>-against-<br><br>CITY UNIVERSITY OF NEW YORK and SCOTT CALLY,<br>Defendants. | **ORDER**<br><br>25 Civ. 1387 (NCM) (VMS) |

**Vera M. Scanlon, United States Magistrate Judge:**

The Court has reviewed Plaintiff's second motion to compel testimony at ECF No. 61 and Defendants' response in opposition at ECF No. 62. For the reasons stated herein, the Court denies Plaintiff's motion.

## I. BACKGROUND

The Court assumes familiarity with the factual and procedural background of this discovery dispute. See generally ECF No. 60. Plaintiff requests an order from the Court "compelling testimony from Defendant Scott Cally and non-party witness Gila Rohr in compliance with the Court's Order dated October 5, 2026." See ECF No. 61 at 1. That Order stated in relevant part:

> Defendants have sufficiently shown that Ms. Douglas's primary purpose in attending the meetings was to provide legal advice, and her communications at the meetings were primarily legal in nature . . . While Plaintiff may question the witnesses about the meetings in general, the Court finds that communications at the meetings by or in response to Ms. Douglas are protected by the attorney-client privilege. Protected communications involving Ms. Douglas at the meetings include but are not limited to: (1) Ms. Douglas's mental impressions on Plaintiff's underlying allegations; (2) Ms. Douglas's guidance about whether Plaintiff should continue in his capacity as an adjunct; and (3) Ms. Douglas's advice about proposed revisions to Plaintiff's job duties in the broader context of Plaintiff's discrimination claims. See ECF No. 59 at 2. Accordingly, the deposition of Defendant Cally should go forward subject to these limitations. To the extent Plaintiff seeks to re-open the depositions of Ms. Rohr and Mr. McMcKinney, the

> witnesses cannot be compelled to provide further testimony related to communications at the three meetings by or in response to Ms. Douglas.

See ECF No. 60 at 6 (hereinafter, the "October Order").

In the instant motion, Plaintiff explains that on October 28, 2026, "Plaintiff attempted to depose Ms. Rohr a second time, for one hour, subject to the limitations set forth in the Court's Order." See ECF No. 61 at 2. Plaintiff "understood the Court's Order to prohibit testimony about communications made 'by or in response to Ms. Douglas,'" thereby permitting Mr. Rohr to answer general questions about the meeting and questions about communications made between meeting participants other than Ms. Douglas, provided those communications were not "in response" to something Ms. Douglas had said and did not reveal her mental impressions, guidance, or advice. Id. Plaintiff contends that Ms. Rohr refused or was directed by counsel not to answer multiple, non-privileged questions. Id. Defendant Cally was deposed on October 29, 2026, and Plaintiff says he similarly refused to answer multiple questions, including "whether the topic of 'discontinuing' Plaintiff's 'teaching responsibilities' was addressed at the November meeting." Id. at 3.[1]

Plaintiff contends that the November 8, 2023, and December 11, 2023, meetings "are the only occasions where Defendant Cally and Gila Rohr—the two key actors—ever spoke face-to-fact about Plaintiff's disability or accommodations before executing the adverse actions." Id. Plaintiff argues that Defendants are obstructing Plaintiff from obtaining key information about the adverse actions at issue "because they happened to be decided at meetings where an attorney was also present." Id. Plaintiff contends that whether certain topics were addressed is not privileged. Id. In addition, "facts about what Cally considered" are critical to challenging his

---

[1] Defendant Cally's October 29, 2026, deposition transcript is not yet available. See ECF No. 61 at 3.

defense that the adverse actions were taken for non-discriminatory, non-retaliatory reasons. Id. Plaintiff says his questions about who spoke the most and least at the meetings and whether Ms. Douglas spoke at the meetings were "intended to map out the scope of the privileged communications and determine what substantive information could permissibly be revealed without compromising the privilege." Id.

Plaintiff requests an order directing Defendant Cally and Ms. Rohr to comply with the October Order in connection with questions about the November and December 2023 meetings. Id. at 4. Plaintiff also seeks reasonable expenses, including attorneys' fees, caused by Defendants' alleged failure to comply with the October Order, citing Federal Rule of Civil Procedure 37(b)(2)(C). Id. Plaintiff argues that "[a]s a result of Ms. Rohr's failure to meaningfully answer counsel's questions, in violation of a Court order, the deposition not only ended up being a waste of time and resources; it also resulted in the need to draft and prepare a second motion to compel." Id.

In response, Defendants argue that Plaintiff "fundamentally mischaracterizes the conduct of Defense counsel and Gila Rohr during her reopened deposition . . . and the conduct of Scott Cally during his deposition." See ECF No. 62 at 1. Defendants further assert that Plaintiff's motion is unwarranted because Plaintiff's counsel "prematurely terminated the depositions and, in particular, used Gila Rohr's reopened deposition largely to pursue frivolous, overly broad lines of questioning that improperly implicated privileged communications." Id. As to Ms. Rohr, Defendants contend that, "[c]ontrary to Plaintiff's assertions, Ms. Rohr did not refuse to answer questions indiscriminately. Rather, Ms. Rohr declined to answer questions on the basis of advice of counsel on only a handful of occasions." Id. at 2. Those directives occurred "when Defense counsel believed that the question implicated privileged communications." Id. Defendants also

contend that "Plaintiff's counsel repeatedly posed broad, imprecise questions concerning Ms. Douglas's remarks and discussions at the meeting without clarifying that the questions concerned communications independent of any privileged exchanges involving Ms. Douglas." Id. Accordingly, Defendants argue that Ms. Rohr and defense counsel appropriately asserted that Ms. Rohr could not answer questions that called for the disclosure of privileged communications, and Plaintiff now improperly characterizes those responses as a refusal to testify. Id. at 2-3. Defendants state that Ms. Rohr previously "testified extensively regarding the reasons for the decision to change Mr. Monaco's job duties and made clear that the changed duties were drafted by Mr. Cally and that the decision to remove Mr. Monaco's teaching responsibilities was solely Mr. Cally's determination." Id. at 3.

As to Defendant Cally, Defendants dispute Plaintiff's characterization of his deposition testimony. Id. "Defense counsel did not instruct Mr. Cally not to answer any questions during his deposition. Rather, Mr. Cally answered all questions posed to him, occasionally explaining that he could not provide a substantive response without disclosing privileged communications with Beth Douglas." Id. In addition, Defendant Cally was questioned about meetings that occurred nearly three years ago and occasionally indicated that he could not recall certain details. Id. Defendants argue that there is no basis to suggest that Defendant Cally was being untruthful or evasive. Id. Defendants state that:

> Mr. Cally spent hours providing detailed testimony concerning when and why he decided that Plaintiff would no longer teach the practicum as part of his adjunct professor role and the facts underlying that decision. Specifically, Mr. Cally testified that he decided to discontinue Plaintiff's teaching responsibilities following a September 2023 meeting during which Plaintiff engaged in insubordinate conduct by entering his supervisor's personal space and taking photographs of the supervisor's notes. Mr. Cally further explained that this decision was made well before he became aware that Plaintiff required any workplace accommodation. He also testified regarding his subsequent decision to modify Plaintiff's job duties, explaining that he made those changes because he

> believed they would best accommodate Plaintiff. Additionally, Mr. Cally was questioned extensively about the email annexed as Plaintiff's Exhibit 3 and answered every question posed concerning that email

Id. Plaintiff's counsel elected to terminate the deposition before the expiration of the seven-hour examination period permitted under the Federal Rules. Id. Based on the foregoing, Defendants request that the Court deny Plaintiff's motion in its entirety, or alternatively, reserve decision until the final transcripts of both depositions are available. Id.

## II. LEGAL STANDARDS

The Federal Rules of Civil Procedure provide that a party may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012) (internal quotations & citations omitted). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). For a communication to qualify for this privilege, its predominant purpose must be to obtain or provide legal advice. See Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 37 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014); see also Egiazaryan v. Zalmayev, 290 F.R.D. 421, 428 (S.D.N.Y. 2013) (explaining the attorney-client privilege only applies where the communication in question is "primarily or predominantly of legal character"). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." In re Cnty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007). "It is well-established that the attorney-client privilege applies only where legal advice, not business advice, is sought and

given." Urb. Box Off. Network, Inc. v. Interfase Managers, L.P., No. 01 Civ. 8854 (LTS) (THK), 2006 WL 1004472, at *4 (S.D.N.Y. Apr. 18, 2006). The burden is on the party asserting the privilege and any ambiguities are construed against that party. Koumoulis, 295 F.R.D. at 38 (collecting cases).

Rule 37(b)(2)(C) provides that if a party fails to comply with a court order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

## III. DISCUSSION

The Court has reviewed the rough draft transcript of Ms. Rohr's October 28, 2026, deposition and provides its determinations below. The first disputed exchange was:

> Plaintiff's counsel: Did the issue of a reasonable accommodation, in light of the fitness for duty certification, come up at this meeting?
> Defendants' counsel: Objection. I direct the witness not to answer, if answering would require you to disclose any privileged communications.
> . . .
> Ms. Rohr: It would because legal counsel took part in that conversation. Yes, it would -- it is privileged information.

See ECF No. 61-1, Rohr Dep. 11:4-16. Given the October Order's directive "that communications at the meetings by or in response to Ms. Douglas are protected by the attorney-client privilege," see ECF No. 60 at 6, Ms. Rohr's answer appears to comply with the Court's set-forth limitations, i.e., Ms. Rohr refrained from answering the question because "legal counsel," Ms. Douglas, participated in the conversation at issue.

The next disputed exchange was:

> Plaintiff's counsel: Was there a discussion as to what type of reasonable accommodations could be provided for Robert Monaco, during that meeting?
> Defendants' counsel: Objection. I'm directing the witness not to answer the question on the basis attorney/client privilege.

See ECF No. 61-1, Rohr Dep. 15:15-21. Based on the excerpts provided, the Court accepts Defendants' counsel's objection based on attorney-client privilege. The Court previously concluded that "Ms. Douglas's mental impressions on Plaintiff's underlying allegations" were protected communications. See ECF No. 60 at 6. Because Plaintiff alleges that he was denied reasonable accommodations, this question about whether there was a discussion of reasonable accommodations at the meeting that Ms. Douglas attended also falls within the October Order's limitations.

The next disputed exchange was:

> Plaintiff's counsel: Was there a discussion in this meeting about changing Robert Monaco's job duties?
> Defendants' counsel: Objection. I'm directing the witness not to answer the question on the basis of attorney/client privilege.

See ECF No. 61-1, Rohr Dep. 16:4-8. Based on the excerpts provided, the Court accepts Defendants' counsel's objection based on attorney-client privilege. The Court previously concluded that "Ms. Douglas's advice about proposed revisions to Plaintiff's job duties" were protected communications. See ECF No. 60 at 6. Thus, this question about changing Plaintiff's job duties falls within the October Order's limitations.

The next disputed exchange was:

> Plaintiff's counsel: Did Scott Cally say anything about Robert Monaco needing reasonable accommodations in this meeting?
> Defendants' counsel: Objection. I'm going to state that the witness can answer the question, to the extent that it doesn't disclose any privilege communications.
> . . .

See ECF No. 61-1, Rohr Dep. 16:15-17:14. Based on the excerpts provided, the Court accepts Defendants' counsel's objection directing the witness not to answer to the extent an answer would disclose privileged communications. The Court finds that this question would have been more appropriately posed directly to Defendant Cally at his deposition.

There were several exchanges about who spoke the most and least during the meetings. See ECF No. 61-1, Rohr Dep. 19:2-6; 19:12-15; 29:13-16. While the Court is unsure of the value of this information, it finds that Defendants' counsel's objections based on attorney-client privilege were not appropriate, as these questions do not implicate the type of privileged communications contemplated by the October Order. Nonetheless, given the lack of precision in these questions or utility in these answers, the Court will not require the witness to answer this line of questioning.

The next disputed exchange was:

> Plaintiff's counsel: Did Beth Douglas, without telling me what was said, did she speak during the meeting?
> Defendants' counsel: Objection. I'm directing the witness not to answer the question on the basis of attorney/client privilege.

See ECF No. 61-1, Rohr Dep. 29:7-12; see also id. 19:16-20. It is safe to assume that Ms. Douglas spoke at a meeting that she attended, particularly one where Defendants' counsel represents that Ms. Douglas made privileged communications. The Court will not require a further response.

Plaintiff disputes several other exchanges involving questions about "Robert Monaco's adjunct teaching duties," "draft[ing] a change in Mr. Monaco's job duties," and "discussion about speaking with Robert Monaco about reasonable accommodations." See ECF No. 61-1, Rohr Dep. 22:4-10; 21:11-19; 27:6-16. Such questions fall squarely into the privileged Ms. Douglas communications that were set forth in the October Order. See ECF No. 60 at 6. The Court finds that Defendants' counsel's objections based on attorney-client privilege were therefore appropriate. Moreover, Defendants state that Ms. Rohr "testified extensively regarding the reasons for the decision to change Mr. Monaco's job duties and made clear that the changed duties were drafted by Mr. Cally and that the decision to remove Mr. Monaco's teaching

responsibilities was solely Mr. Cally's determination." See ECF No. 62 at 3. Thus, the Court finds that these questions are unlikely to produce new information.

As to Defendant Cally, without the deposition transcript, the Court is unable to make determinations about the appropriateness of Defendants' objections to specific questions. However, the Court is satisfied by Defendants' counsel's representations that "Mr. Cally answered all questions posed to him, occasionally explaining that he could not provide a substantive response without disclosing privileged communications with Beth Douglas" or answered that he could not recall certain details from meetings that occurred nearly three years ago. See ECF No. 62 at 3. Moreover, Defendants' counsel represents, and the Court has no reason to doubt, that "Mr. Cally spent hours providing detailed testimony concerning when and why he decided that Plaintiff would no longer teach the practicum as part of his adjunct professor role and the facts underlying that decision." Id. The Court will not require Defendant Cally to be re-deposed, particularly given the fact that Defendant Cally's deposition concluded "well before" the seven-hour examination limit. Id.

For the reasons detailed herein, the Court denies Plaintiff's motion to compel further testimony. Counsel are reminded that they must make a good faith effort, pursuant to the Federal and Local Civil Rules, to resolve disputes before making a motion.

Dated: Brooklyn, New York
November 6, 2026

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge